**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**AMIN REALTY, L.L.C.,**

                           **Plaintiff,**

              -against-

**TRAVELERS PROPERTY CASUALTY COMPANY,**

                           **Defendant.**
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**

**05-CV-195 (RLM)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Plaintiff Amin Realty, L.L.C. ("plaintiff" or "Amin") brings this action against defendant Travelers Indemnity Company ("defendant" or "Travelers"),[1] seeking a declaratory judgment that the defendant insurer breached its duty to defend and indemnify its insured, K&R Construction Corp. ("K&R"), in an underlying suit for breach of contract and negligence. Amin also seeks to collect on K&R's confessed judgment in the amount of $257,943.00.

      After the parties completed discovery and consented to have the case handled for all purposes by a magistrate judge, Travelers moved for summary judgment, contending that, under the policy at issue, it has no obligation to defend or indemnify K&R with respect to the claims against it. Amin cross-moved for summary judgment.

      For the reasons that follow, Travelers' motion is granted, Amin's cross-motion is

---

[1] Plaintiff erroneously named "Travelers Property Casualty Company" as defendant in this action. Defendant has advised that there is no entity known by that name, and that Travelers Indemnity Company, as the party in interest, is the proper defendant in this action. (Notice of Removal, dated 1/13/05, at ¶ 5.)

denied, and the complaint is dismissed with prejudice.

**I. Background**

Most of the material facts are undisputed.[2] In January 2000, Amin entered into a contract with K&R for the construction of a four-story building in Brooklyn. (Pl. Rule 56.1 St. ¶ 3; Compl. ¶¶ 7, 8.) K&R subcontracted with Commercial Builders, LTD ("Commercial") to install the foundation, and Commercial in turn retained Kings Ready Mix, Inc. ("Kings") to prepare, mix and pour the concrete for the project. (Pl. Rule 56.1 St. ¶ 3; Compl. ¶ 8.)

The day after Kings poured the concrete, Commercial determined that Kings had mixed it improperly, preventing it from hardening sufficiently. (Pl. Rule 56.1 St. ¶¶ 4-5; Pl. Mem. at 4.) As a result, the concrete, along with the adjacent steel decking, beams and metal joints, had to be removed and reinstalled. (Pl. Rule 56.1 St. ¶ 6.)

On April 22, 1999, Travelers had issued to K&R a Comprehensive General Liability ("CGL") insurance policy effective from July 8, 1999 to July 8, 2000 ("the Policy"). (Def. Rule 56.1 St. ¶¶ 1.) The Policy provides that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" that is "caused by an 'occurrence.'" (Def. Ex. A-1 ¶ 1(a), (b).)[3] The Policy

---

[2] Amin does not dispute any of the facts alleged in Travelers' Statement Pursuant to [Local Civil] Rule 56.1 ("Def. Rule 56.1 St."). See Plaintiff's Response to Defendant's Rule 56.1 Statement of Facts. Although Travelers disputes a number of the allegations in Plaintiff's Rule 56.1 Statement of Facts ("Pl. Rule 56.1 St."), see Travelers' Response to Plaintiff's Rule 56.1 Statement, those allegations either are immaterial to the motion and cross-motion or concern the contents of documents, copies of which are before the Court.

[3] "Def. Ex." refers to exhibits submitted by defendant with its motion papers.

defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Def. Ex. A-3 ¶ 12.) It defines "property damage," in relevant part, as "[p]hysical injury to tangible property, including all resulting loss of use of that property." (Def. Ex. A-3 ¶ 15.) The Policy contains numerous exclusions from coverage, including:

> (2)(j): "Property damage" to . . . (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(Def. Ex. A-2, A-3 ¶ 2.) "Your work" is defined as "[w]ork or operations performed by you or on your behalf; and [m]aterials, parts or equipment furnished in connection with such work or operations," and "includes [w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work . . . .'" (Def. Ex. A-3 ¶ 19.)

On April 19, 2000, Amin filed a claim with Travelers, which responded by letter that, "[d]ue to the fact that [K&R] did not cause and was not responsible for the damage that occurred we must respectfully deny the claim for damages as no legal liability rests with our insured." (Def. Ex. E.) On October 13, 2000, plaintiff commenced an action in the Supreme Court of New York, Kings County, against K&R, Commercial and Kings for breach of contract and negligence, seeking $165,000 for property damage and $500,000 in business interruption costs. (Pl. Rule 56.1 St. ¶ 7; Def. Ex. B.) On February 2, 2001, Travelers issued a "declination of coverage" letter, notifying K&R that it had no duty to defend or

indemnify K&R in the action because (among other things) the claimed loss did not constitute an "occurrence" under the liability Policy. (Def. Ex. F.) On September 7, 2004, K&R executed a confession of judgment in Amin's favor, in the amount of $257,943.00. (Pl. Rule 56.1 St. ¶ 8; Def. Ex. D.)[4]

Plaintiff commenced the instant action on December 1, 2004, in the Supreme Court of New York, Kings County, alleging that Travelers breached its agreement to provide a defense and indemnity to K&R, and requesting judgment in the amount of K&R's confessed judgment, plus interest.[5] Defendant removed the action to this Court on January 13, 2005.

In support of its summary judgment motion, defendant argues that plaintiff's loss did not arise from an "occurrence," and therefore did not trigger coverage under the Policy. (See Travelers' Memorandum of Law in Support of Motion for Summary Judgment ["Def. Mem."] at 3-6.) In addition, defendant contends that the Policy's exclusionary clauses expressly preclude coverage for the type of losses plaintiff alleges. (Id. at 6-7.) In opposition to defendant's motion and in support of its cross-motion for summary judgment, plaintiff argues that the installation of defective concrete on its premises constituted an "occurrence," and that the Policy exclusions on which defendant relies are inapplicable. (See Plaintiff's

---

[4] The trial court granted summary judgment against Kings, but the Appellate Division reversed, granting summary judgment instead in Kings' favor. See Amin Realty, LLC v. K&R Constr. Corp., et. al, 306 A.D.2d 230 (2d Dep't 2003). Commercial defaulted in the state action. (Compl. ¶ 14.)

[5] The action was filed pursuant to New York Insurance Law § 3420(b), which authorizes "any person who . . . has obtained a judgment against the insured . . . for damages for injury sustained or loss or damage occasioned during the life of the policy or contract" to maintain an action against the insurer to recover the amount of the judgment. N.Y. Ins. Law § 3420(b) (McKinney 2000).

Memorandum of Law In Support of Cross-Motion For Summary Judgment and in Opposition To Defendant's Motion For Summary Judgment ["Pl. Mem."] at 6-18, 24-35.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. A genuine issue of material fact exists if "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In ruling on a summary judgment motion, the Court must resolve all ambiguities and draw reasonable inferences in favor of the non-moving party. See Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995). When cross-motions for summary judgment are made, the standard is the same as that for individual motions. See Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001). The Court must examine each motion "on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Id.

Where, as here, the sole question presented to the Court is the interpretation of a clear and unambiguous written agreement, the issue is one of law and may properly be decided by the Court upon a motion for summary judgment. See Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co., 775 F.Supp. 606, 609 (S.D.N.Y. 1991), aff'd, 961 F.2d 387 (2d Cir. 1992).

### B. Traveler's Duty to Indemnify

Under New York law, which applies to the claims in this diversity action, an insurer's obligation to indemnify an insured arises only when the insurance contract creates such a duty. See Jakobson Shipyard, 961 F.2d at 389. In interpreting a contract, the Court must not "frustrate the intentions of the parties by altering the contract's terms or by reading into the contract meanings not contemplated by the parties." Id. "Once an insured has come forward with evidence of a loss covered by the insurance policy, the burden shifts to the insurer to show that the loss is excluded from coverage." Id.

#### 1. The Existence of an Occurrence

Plaintiff has not established that the damage for which K&R executed a confessed judgment constitutes a covered loss under the Policy issued by Travelers to K&R. It is well-settled under New York law that "the issuer of a commercial general liability policy is not a surety for a construction contractor's defective work product." Bonded Concrete, Inc. v. Transcontinental Ins. Co., 12 A.D.3d 761, 762 (3d Dep't 2004) (citation omitted) (insurer had no duty to indemnify concrete manufacturer in action for supplying defective concrete, as the damages sought were simply the costs of correcting the insured's product; there was no allegation of damage to property other than the completed work itself). "The coverage [provided by a CGL policy] is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." J.Z.G. Resources, Inc. v. King, 987 F.2d 98, 103 (2d Cir. 1993) (ordering dismissal of claims against insurer and holding that, under New York law, insurer had no duty to indemnify road building contractor in action brought

by residential developer for constructing roads at improper elevations and grades; the damage did not result from an occurrence, because the claim was simply for the costs of repairing the faulty roads, rather than for consequential property damage inflicted on other property as a result of the poor workmanship).

In this case, the allegations in plaintiff's complaint in the underlying state action essentially involve a contract dispute between plaintiff and K&R over faulty workmanship attributable to K&R, or entities providing labor and materials on its behalf, on a building K&R was hired to construct. The only damage alleged to have occurred was property damage to K&R's work product (the building itself) or damages resulting from the loss of use of that building. As such, the injury does not arise out of an "occurrence" as defined in the Policy. To interpret the Policy to cover plaintiff property owner's economic losses arising from K&R's defective work would "transform [Travelers] into a surety for [K&R's] performance," a result that the parties to the insurance contract never intended. George A. Fuller Co. v. U.S. Fid. & Guar. Co., 200 A.D.2d 255, 260 (1st Dep't 1994).

Plaintiff's inclusion, in the state court complaint, of a cause of action for negligent supervision in no way alters this conclusion. For purposes of determining whether there is a duty to indemnify, "[t]he important distinction is not whether the complaint states a contract or tort theory, but whether the damage to be remedied is the faulty work or product itself[,] or injury to person or other property." Royal Ins. Co. v. Ru-Val Elec. Corp., No. CV-92-4911, 1996 WL 107512, at *2 (E.D.N.Y. Mar. 8, 1996). "A contract default under a construction contract is not transformed into an 'accident, including continuous or repeated exposure to substantially the same general harmful conditions' by the simple expedient of alleging

negligent performance or negligent construction." Fuller, 200 A.D.2d at 259-60; see also Pepco Contractors, Inc. v U.S. Fid. & Guar. Co., 99 A.D. 661, 662 (4th Dep't 1984) ("The fact that the second and third causes of action are labeled 'fraudulent inducement' and 'negligence' does not change the fact that they seek damages for the cost of repairing the highway and thus are essentially the same as the first cause of action for breach of contract."); Parkset Plumbing & Heating Corp. v. Reliance Ins. Co., 87 A.D.2d 646, 647 (2d Dep't 1982) ("[T]he mere use of the word 'negligent' alone cannot turn the complaint into a cause of action for negligence.").

Although plaintiff's state court complaint alleged that K&R was negligent in failing to properly supervise the subcontractor's work on the concrete foundation, all of the claims in the underlying action involved K&R's failure to meet its contractual obligations. Unfortunately for plaintiff, courts in New York and in this Circuit have made clear that "[l]iability policies do not provide coverage where the complaint sounds in contract and not in negligence." Royal Ins., 1996 WL 107512, at *2 (collecting cases). As demonstrated by an examination of analogous cases interpreting New York law, that principle applies with equal force to the instant action.

In George A. Fuller Company v. United States Fidelity and Guaranty Company, a property owner sued the general contractor it had hired to construct a residential and commercial building; the owner alleged that the contractor's defective installation of wood flooring, a curtain wall, and a water metering system caused water infiltration throughout the building, necessitating additional construction costs and diminishing the building's value. 200 A.D.2d at 257-58. There, as here, the contractor had subcontracted the work that was

alleged to be defective.  Id. at 259.  Although plaintiff asserted claims both for breach of contract and negligence, the Appellate Division declared that it is "manifestly clear from a reading of the complaint [that] the asserted claims arise out of a contract dispute."  Id.  Reversing the lower court, the Appellate Division granted summary judgment in the insurer's favor, holding that the damages were not attributable to an "occurrence."  As the court explained, "[t]he liability policy was never intended to insure Fuller's work product or Fuller's compliance . . . with its contractual obligations.  Nor may the [underlying] complaint be read to assert a claim other than one by a contracting party for the economic loss it sustained due to the allegedly defective work by the other contracting party."  Id. at 260.

Also instructive is the Second Circuit's decision in Jakobson Shipyard, Inc. v. Aetna Casualty & Surety Company, in which a shipbuilder manufactured and delivered to a barge company two tugboats containing defective steering mechanisms that rendered the tugs inoperable.  961 F.2d at 388.  Applying New York law, the Second Circuit agreed with the district court that Jakobson's insurer had no duty to defend or indemnify it in the underlying action, because the "damages sought were for damages to the tugs themselves resulting from the defective steering mechanisms," and not to "the property or persons of third parties . . . ."  Id. at 389.  There, as here, the insured's work merely failed to meet contract specifications, and thus did not involve damage caused by an "occurrence."  Id.

Similarly, in Baker Residential Limited Partnership v. Travelers Insurance Company, a real estate developer sought a declaratory judgment that its insurer had a duty to defend it in an underlying action by a residential condominium association based on the developer's defective installation of structural beams.  10 A.D.3d 586, 586 (1st Dep't 2004).  The beams

deteriorated from water penetration due to improper flashing and waterproofing. Id. at 586-87. The Appellate Division held that the action involved "a classic faulty workmanship/construction contract dispute," and that the damages sought "did not arise from an 'occurrence' resulting in damage to property distinct from the plaintiffs' own work product, as contemplated by the policy." Id. at 587. The Appellate Division therefore affirmed a grant of summary judgment in favor of the insurer.

Plaintiff's attempts to distinguish the aforementioned cases are all unavailing. First, plaintiff notes that Fuller, Jakobson and Baker involved damage resulting from the negligent *installation* of a product that was otherwise in good condition, whereas the damage in this case resulted from the negligent *manufacture* of the product, i.e., the improper mixing of the concrete.[6] Plaintiff cites no cases to support its proffered distinction, and provides no logical reason for its adoption. Had the concrete been properly mixed but improperly poured, rather than the reverse, the floor would have been rendered similarly defective and plaintiff would have suffered the same loss.

Plaintiff also argues that, while the damage in Jakobson and Baker was to the insured's work product, here the removal of the concrete resulted in damage to other parts of the building. (Pl. Mem. at 11, 14-16.) Specifically, plaintiff references the steel decking that

---

[6] See Pl. Mem. at 10-11 ("[T]he production of concrete which is completed and then subsequently poured into a building is not synonymous with the improper installation of fixtures or appurtenances such as doors, floors, windows or steel beams as referred to in the cases cited by defendant."); see also Pl. Mem. at 13-14, 16-17. In fact, the plaintiff in Jakobson complained of the defendant's "failure to manufacture the steering mechanisms in a workmanlike manner." 961 F.2d at 389. There is nothing in the opinion to suggest that the steering mechanisms had been improperly *installed*.

had to be removed and replaced along with the concrete. In support of its argument that this damage arises from an "occurrence," plaintiff contends that New York courts "have held that [] a CGL policy provides coverage for damages for a structure or product when an insured's defective product is a mere component of another product or structure." (Pl. Mem. at 14-15, citing <u>Adler v. Nielson Co. v. Ins. Co. of N. Am.</u>, 56 N.Y.2d 540 (1982); <u>Apache Foam Prods. v. Cont'l Ins. Co.</u>, 139 A.D.2d 767 (4th Dep't 1978); <u>Marine Midland Servs. Corp. v. Samuel Kosoff & Sons, Inc.</u>, 60 A.D.2d 767 (4th Dep't 1978)).

Plaintiff's reliance on the "mere component" cases represents a fundamental misunderstanding both of the rationale of those cases and of the scope of the work for which K&R was responsible. In each of those cases, the insured's product was integrated into a larger entity or structure that was *not* the work product of the insured; when the component product proved to be defective, the defect caused damage to the larger structure and thus constituted an "external force" with regard to the property or persons of third parties. See <u>Jakobson</u>, 961 F.2d at 389-90 (distinguishing component-parts cases). In such a situation, the courts concluded, that portion of the damage that extended beyond the insured's work product could be found to have resulted from an "accident or "occurrence." See <u>Marine Midland</u>, 60 A.D.2d at 769.[7]

---

[7] In <u>Marine Midland</u>, the general contractor and roofing subcontractor -- both of whom were insured by the same liability carrier -- were performing improvements on an existing building that was allegedly damaged as a result of defective roofing work. 60 A.D.2d at 767-68. The court concluded that, in light of the possibility that the damage extended to the existing structure and thus beyond the scope of the insureds' work product, the insurer was obligated to defend the contractor and subcontractor. <u>Id.</u> at 768-69.

The two other cases cited by plaintiff -- <u>Apache</u> and <u>Adler</u> -- involved interpretations of policy

In contrast to the facts in the "mere component" cases, here the insured was the general contractor constructing an entirely new building, and, as such, was responsible for all work performed by those with whom it subcontracted. See Pavarini Constr. Co. v. Cont'l Ins. Co., 304 A.D.2d 501, 502 (1st Dep't 2003) (citing Basil Dev. Corp. v. Gen'l Accidental Ins. Co., 89 N.Y.2d 1057 (1997)). In other words, K&R was responsible for all the labor and materials that went into fabricating the building, and not just for the concrete foundation on which its subcontractor, Kings, was working when the damage occurred.[8] Consequently, any damage to the building constituted injury to the insured's work product -- as opposed to "consequential property damage inflicted upon a third party as a result of the insured's activity" with respect to an independent component part. J.Z.G., 987 F.2d at 102. Plaintiff's reliance on the "mere component" cases is thus misplaced, as it erroneously assumes that, in the determination of whether an "occurrence" took place, the relevant work product is the concrete foundation alone. (See Pl. Mem. at 11-12, 14, 17.)[9] Simply put, the

---

*exclusions*, not "occurrences." In those cases, where the insureds were *subcontractors*, not general contractors, the courts held that the exclusion from coverage for damage to the insured's own work product did not operate to deny the subcontractor coverage for damage caused by the insured to the work product of others. See Adler, 56 N.Y.2d at 542; Apache, 139 A.D.2d at 934.

[8] Indeed, it was on this basis that plaintiff sued, and obtained a judgment against, K&R for the installation of the defective concrete.

[9] Plaintiff's analysis would have merit had plaintiff contracted directly with the subcontractor Kings, obtained a judgment against Kings, and then sought to recover from Kings' insurer -- which happens to be Travelers -- for that portion of the damage that extended to parts of the building other than the concrete foundation. See, e.g., Royal Ins. Co., 1996 WL 107512, at *3 (where the insured, an electrical contractor, installed wiring that caused a fire, damage to the premises was an "occurrence" because the insured's work consisted only of the wiring). However, plaintiff's claims against Kings were dismissed by the state appellate court. See *supra* note 4.

damages sought herein do "not arise from an 'occurrence' resulting in damage to property distinct from [the insured's] own work product, as contemplated by the policy." Baker, 10 A.D.2d at 587 (citations omitted).

Accordingly, this case is indistinguishable from the Fuller line of cases on which defendant relies. In Fuller, the court held that, because the insured had been hired as the general contractor to provide a completed building, any alleged defects in the construction of the building, including water infiltration, involved the insured's work product and therefore did not result from a covered "occurrence." See Fuller, 200 A.D.2d at 260.[10]

Equally unavailing is plaintiff's suggestion that it is entitled to recover as a third-party beneficiary of the contract between Kings and Commercial, the subcontractor that in turn subcontracted to Kings. (Pl. Mem. at 16.) As a preliminary matter, the Appellate Division has already determined that plaintiff was not a third-party beneficiary of that contract. See Amin Realty, LLC v. K&R Constr. Corp., 306 A.D.2d 230, 231-32 (2d Dep't 2003). In any event, the relevant relationship is between plaintiff and K&R, the parties to the contract for the construction of the building. Any damage to the building constituted damage to a contracting party resulting from the insured's failure to complete the work as bargained for. As previously noted, such damage is not within the scope of coverage of a CGL policy. See *supra* pp. 6-7.[11]

---

[10] Plaintiff misstates the facts in Fuller, contending that the only damage alleged was to the wood flooring, the product that the insured had installed defectively. (Pl. Mem. at 12.)

[11] Plaintiff also cites a New York case in which the court held that the sexual misconduct of a health spa employee against a customer was "unexpected, unusual, and unforeseen," and therefore constituted an accident/occurrence within the coverage of a GCL policy. (Pl. Mem. at

Plaintiff does cite cases from other jurisdictions, including Texas, Washington, Kansas, Missouri, and the Fifth, Eighth and Ninth Circuits (Pl. Mem. at 18-24), which adopt the minority view that negligent acts of the insured causing unexpected damage are within the definition of an accident/occurrence in the context of a CGL insurance policy. However, this case is governed by the law of New York, which has adopted the majority rule: to wit, that defective workmanship, standing alone, is not an occurrence under a CGL policy. See <u>Couch on Insurance</u> § 129:4 (3d ed. 2005) (noting that most jurisdictions have held that " faulty workmanship, in and of itself, is not an occurrence under a commercial general liability policy because a failure of workmanship does not involve the fortuity required to constitute an accident."). Therefore, the cases cited by plaintiff have no bearing on the outcome of this case.

### 2. The Applicability of Policy Exclusions

Even assuming *arguendo* that the damage to the building resulted from an occurrence, Travelers is nevertheless entitled to judgment in its favor, as coverage is expressly excluded by several exclusions set forth in the CGL Policy. Specifically, defendant relies on exclusions 2(j)(5) and 2(j)(6), which exclude property damage to " [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations"; or

---

23, citing <u>RJC Realty Holding Corp. v. Republic Franklin Ins. Co.</u>, 2 N.Y.3d 158 (2004)). That case involved a tort committed against a third party, which, in contrast to the present case, is precisely the sort of injury that a CGL policy is intended to cover. See <u>Bonded Concrete</u>, 12 A.D.3d at 784 (explaining that the purpose of a CGL policy is to provide coverage for tort liability for physical damage to others).

"[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' [including operations performed 'on your behalf'] was incorrectly performed on it." (Def. Ex. A-2; see Def. Ex. A-3 ¶ 19.)[12]

Again, the relevant facts are undisputed. Kings, a subcontractor working on K&R's behalf, was performing operations on the first floor of the building when it poured the defective concrete, ultimately causing damage to that floor. In other words, as a result of operations by the insured (K&R) and its subcontractors on that particular part of the property on which K&R was working -- i.e., the building -- the structure was damaged and had to be repaired. The damage is therefore excluded from coverage pursuant to the work-product exclusions in 2(j)(5) and (6). See Pavarini, 304 A.D.2d at 502 ("While [the general contractor] claims that the damages sustained by its client were not attributable to its work, but rather that of its subcontractor, . . . the claim, even if factually accurate, is without significance regarding the applicability of" similar exclusions); Fuller, 200 A.D.2d at 261 ("Since it is clear that all of [the] claims arise out of defects in the building constructed by Fuller *or the construction of which it managed pursuant to its contracts*, the work product exclusion applies to exempt these claims from coverage.") (emphasis added); Poulos v. U.S. Fid. & Guar. Co., 227 A.D.2d 539, 540 (2d Dep't 1996) (rejecting homeowners' argument that work-product exclusion extended only to defective wooden spindle posts; "since all of [their] causes of action against [the contractor] related to defects in the construction of the

---

[12] The "products completed operations hazard" ("PCOH") exception to exclusion 2(j)(6) does not apply because K&R's work – the building – was not completed when the damage occurred. Cf. J.Z.G., 987 F.2d at 101 (construing PCOH coverage).

extension, these causes of action fell within the exclusion and were properly exempted from coverage . . ."); Zandri Constr. Co. v. Firemen's Ins. Co., 81 A.D.2d 106, 109 (3d Dep't 1981) (where insured general contractor's defective work in constructing a church required the expenditure of substantial money to repair the building, the policy exclusions "unambiguously exclude[d] coverage for property damage to the insured's work product caused by its failure to perform in a workmanlike manner or by its breach of warranty of fitness or quality of that work product; i.e., the completed church.").

In arguing that the exclusions are inapplicable, plaintiff once again relies on cases that do not involve New York law (Pl. Mem. at 26-31) and that therefore have no bearing on this case. Plaintiff also cites irrelevant facts, noting, for example, that the defective performance (i.e., the mixing of the concrete) occurred off the premises. (Pl. Mem. at 28.) However, even assuming *arguendo* that exclusion 2(j)(6) applies only to faulty work performed *at the site*, exclusion 2(j)(5) plainly contains no such limitation: it applies to property damage "aris[ing] out of the operations" of K&R or its subcontractors. Whether performed on-site or off-, Kings' defective mixing of the concrete constituted the performance of an operation on K&R's behalf resulting in property damage to the real property on which K&R was working. See generally Pavarini, 304 A.D.2d at 501-02 (damage to waterproofing, caulking and expansion joint work, caused by the "volumetric expansion and contraction" of concrete components installed by subcontractor, were excluded from coverage pursuant to work-product exclusion in general contractor's policy); Fuller, 200 A.D.2d at 261 (work-product exclusion exempted from coverage claims against general contractor for water damage to newly constructed building, resulting from subcontractor's defective installation of floors,

curtain wall and water metering system). Consequently, coverage is excluded, at a minimum, under 2(j)(5).

### 3. Plaintiff's Claim for Loss of Rental Income

Plaintiff argues that, even if policy exclusions apply to preclude coverage for tangible damage to its property, plaintiff is nevertheless entitled to summary judgment for damages relating to lost income because, "[u]nder any scenario, the 'damage to property' exclusion does not apply to a lost rental income claim . . . ." (Pl. Mem. at 36.) Plaintiff is incorrect.

First, because insurance coverage applies only to property damage that is caused by an "occurrence" (see Def. Ex. A-1 ¶ 1(b)), and "property damage" is defined to include "[l]oss of use of tangible property" (see Def. Ex. A-3 ¶ 15), the absence of an "occurrence" precludes coverage for the loss of rental income resulting from the additional time needed to repair the foundation and steel decking. Furthermore, even assuming that an "occurrence" caused the loss of rental income, coverage is barred by the work-product exclusions, which apply to property damage including "[l]oss of use of tangible property." (Id.) See Zandri, 81 A.D.2d at 106 (work-product exclusions barred coverage for damages resulting from defective construction of church, including additional costs incurred as a result of having "to vacate the building and conduct religious services elsewhere"). Accordingly, the lost rental income stands on the same legal footing as the cost of repairs -- Travelers has no obligation to provide indemnification for either amount.

### CONCLUSION

For the reasons set forth above, defendant's motion for an order granting it summary judgment on all claims is granted in its entirety, plaintiff's cross-motion for summary

judgment is denied, and the complaint is dismissed with prejudice.  The Clerk of the Court is directed to enter judgment accordingly.

        **SO ORDERED.**

**Dated:**        **Brooklyn, New York**
                  **June 20, 2006**

                                          **ROANNE L. MANN**
                                          **UNITED STATES MAGISTRATE JUDGE**